[Civ. No. 987.   Third Appellate District.—October 15, 1912.]

M. R. MADARY, Respondent, v. THE CITY OF FRESNO, Appellant, and J. R. HICKMAN, as County Treasurer, etc., Codefendant.

TAXATION—CITY TAXES—ELECTION BY CITY TRUSTEES UNDER ACT OF 1895—PERFORMANCE OF DUTIES BY COUNTY OFFICERS—EQUALIZA-TION.—Where a board of trustees of a city has duly elected, under the terms of the act of March 27, 1895, to make use of the county officers in the matter of the levy and collection of taxes for city purposes, properly computed on the assessed valuation of the city property, as equalized by the board of supervisors, the city taxes so equalized, cannot be affected by a subsequent change in the assessed valuation of such property for state and county purposes, by the state board of equalization.

ID.—CONSTRUCTION OF ACT OF 1895—EFFECT OF USE OF COUNTY OFFICERS—CITY OFFICERS EX OFFICIO.—It is not the intent and purpose of the act of 1895, to merge and confound city and county business, by reason of the election of the board of trustees thereunder, to use the county officers in assessing and collecting city taxes. In discharging the duties of city assessor, city tax-collector, and city treasurer, the respective county officers become or are *ex officio* officers of the city.

ID.—CONSTRUCTION OF POLITICAL CODE AS TO STATE EQUALIZATION OF RAILWAY PROPERTY—POWER OF ELECTION BY CITY—VALIDITY OF ASSESSMENT.—Although section 3671 of the Political Code is to be construed with the preceding section in reference to state equaliza-tion of railway properties situated in more than one county, and

provides that it shall not apply to such property situated in an incorporated city or town, unless its proper officers so elect, it refers to an election by the city trustees, and not by its officers *ex officio,* who have no power to make such election. No election within that section having been made in this case, but the city officers having solely elected to proceed under the act of 1895, its only valid assessment is under that act. There can be but one valid assessment of city property for the same purpose.

ID.—STATUTORY CONSTRUCTION—CARDINAL RULE.—It is a cardinal rule of statutory construction, that the language of a statute should be so interpreted as to make it compatible with common sense and the dictates of justice. Its construction must be reasonable, and not tend to palpable injustice, contradiction, or absurdity. Justice is the aim of all legislation.

ID.—CAUSE OF ACTION TO RECOVER EXCESS OF TAXES COLLECTED BY CITY—MISJOINDER OF CITY TREASURER NOT PREJUDICIAL.—Where the complaint states a sufficient cause of action to recover an excess of taxes collected by the city defendant from plaintiff and his assignors, the city treasurer is not a necessary party to such action; but it is held that the city could not be prejudiced by the misjoinder of its treasurer, who was a mere agent or ministerial officer to collect the money for the city. Nor can the city complain that no judgment was rendered for or against the treasurer, as the city alone is liable, and has no right to complain of error as to the city treasurer.

ID.—FORMER APPLICATION FOR WRIT OF MANDATE AGAINST TREASURER NO BAR TO ACTION AGAINST CITY.—The fact that a former proceeding was improperly brought against the treasurer for a writ of mandate, since he owed no duty to pay a rejected demand, until a proper judgment thereon was recovered against the city, cannot constitute a bar to an action to establish plaintiff's claim to a money judgment against the city.

ID.—CLAIMS AGAINST CITY OF FRESNO—VERIFICATION—CONSTRUCTION OF CHARTER—PROPER VERIFICATION BY ATTORNEYS.— Under the charter of the city of Fresno, which provides that every demand against the city shall be verified by the oaths of the claimant, or some one for him having knowledge of the facts, it is held that where claims were assigned to the plaintiff, his attorneys having knowledge as to each claim, properly verified them, as attorneys for each of the claimants in the proper form.

APPEAL from a judgment of the Superior Court of Fresno County. Geo. E. Church, Judge.

The facts are stated in the opinion of the court.

Frank Kauke, for Appellant.

M. K. Harris, and Milton M. Dearing, for Respondent.

BURNETT, J.—Upon the merits of the case we are in accord with the views of the Hon. George E. Church, the trial judge, as expressed in the following opinion, which we adopt:

"This action was brought by plaintiff to recover a certain sum or sums of money alleged to have been paid under protest by him and a large number of his assignors, taxpayers in the city of Fresno, illegally levied and collected as part of the taxes of 1909.

"The action is grounded upon the following facts, fully and particularly averred:

"That on January 18th, 1909, the board of trustees of the city of Fresno passed an ordinance, approved the same day, whereby the city elected to avail itself of the services of the necessary county officers in the matter of the collection of its taxes, as provided by act of the legislature approved March 27, 1895, [Stats. 1895, p. 219] ; that, on August 16, 1909, the board estimated and determined by ordinance the necessary amount of money to be raised by taxation for the needs of the city for the fiscal year ending July 1st, 1910, fixing the same at $126,382.50; on or before August 2, 1909, the county auditor certified to the trustees of the city the value of the taxable property within the city, as equalized and corrected by the board of supervisors of the county, acting as a board of equalization, to be $11,055,314.00; on August 16, 1909, said board of trustees calculated and by ordinance established the rate of city taxes and levied the same, such rate being, of course, such per cent of said taxable property as is necessary to raise the said estimated amount of tax; thereafter and after the necessary amount of taxes for the needs of the city had been determined, the rate fixed and levied upon said valuation of the city's taxable property as so finally determined by said board of supervisors sitting as a board of equalization, on, viz.: the 8th of September, 1909, the state board of equalization by order increased the assessment-roll or value of taxable property of the county of Fresno by 'adding 20 per centum' thereto, and, upon notification thereof, the county auditor added 20 per centum to the value of all the property

assessed to each taxpayer, and entered upon the assessment books as being due from the taxpayers of the city for city taxes, an aggregated sum one-fifth greater than the said amount fixed by the board of trustees as necessary for the city's needs for the said fiscal year. It is this so called 20 per cent excess, or so much thereof as was paid under protest by the plaintiff and his assignors, that this suit is brought to recover. It is alleged that it was illegally assessed and collected, and that it is now held by the defendant, J. R. Hickman, as *ex officio* treasurer of the city of Fresno, and illegally withheld by him from plaintiff after due demand.

"By the act of the legislature approved March 27, 1895, entitled 'An act to provide for the levy and collection of taxes, &c.' it is declared to be the duty of the board of trustees . . . of any city in this state, except municipal corporations of the first class, *on the first Monday of August in each year,* to determine and fix by ordinance the amount of money necessary to be raised by taxation for the governmental needs of such city for the current fiscal year, provided that on or before the first Monday of February preceding the city had elected to have the duties of the city treasurer performed by the county treasurer.

"By this act also the county auditor must, on or before the second Monday of August, transmit to the city trustees a statement of the assessed valuation of all property in the city as equalized by the board of supervisors, and then, on the first Monday of September, the trustees, using this valuation as the basis, must compute the rate of taxation sufficient to raise the aforesaid sum estimated and required for city purposes, which rate must be immediately transmitted to the county auditor, and these acts are declared 'to constitute a valid assessment of such property and a valid levy of the rate so fixed.'

"It is plain that it is not the intent and purpose of this act to merge and confound city and county business. It is plain that in discharging the duties of city assessor, city tax-collector, and city treasurer, the respective county officers become or are *ex officiis* officers of the city.

"In the matter of the assessment and levy of state and county taxes, the proceeding is somewhat different. At the same time that the auditor of the county transmits to the city

trustees the statement of the taxable property of the city as prepared by the assessor and equalized and corrected by the board of supervisors, acting as a board of equalization, and which statement serves as the basis of city taxation, he sends a duplicate thereof to the state board of equalization. When the statement, as changed and corrected by the state board, is returned to the auditor, (which must be on or before the 2nd Monday in September), the board of supervisors must, on the third Monday in September, fix the rate of county taxes, using this finally corrected assessment valuation as the basis of its computation. Having previously determined the amount of money necessary to be raised by taxation for county purposes, the fixing of the rate is merely a mathematical computation.

"In the case before us, it is the contention of defendants that notwithstanding the fact that the rate of city taxes is and must be fixed before the action of the state board of equalization, and the further fact that in determining that rate the assessed valuation of city property, as equalized by the board of supervisors, must be taken as the basis of calculation, still, in determining the amount of taxes to be paid by the several taxpayers of the city for city purposes, that amount must be computed not upon the assessed valuation upon which the city rate was determined, but upon the valuation as finally corrected and equalized by the state board of equalization. There would appear to be no good warrant for such contention. To say nothing of the inconsistencies and absurdities to which it would lead, we have already seen that, by the express declaration of the legislative act of March 27, 1895, the acts, first of the city trustees, in determining the needed amount of taxes for the fiscal year; second, of the assessor and board of supervisors in ascertaining and determining the assessed valuation of the city property; and, finally, of the city trustees in fixing the rate, constitute 'a valid assessment of such property and a valid levy of such rate so fixed.' It is difficult to see how there can be two valid assessments for the same purpose.

"It is conceded that, had the city not elected to make use of the county officers, but had its own assessor and tax-collector assess and collect its taxes, their action would not be affected by the state board of equalization. Why, then, should

it be affected when the work is done by its *ex officiis* officers? The city has never elected (as under sec. 3671 Pol. Code it might have elected) to take as the basis of its taxation the assessment as equalized by the state board, and surely its *ex officiis* officers have no power to make such election for it. It is the duty of the state board of equalization 'to equalize the valuation of the several counties of the state,' 'lowering or raising entire assessment-rolls so as to make the assessments conform to the true value in money of the property assessed' and 'to fix the rate of state taxation.' It is manifest that the primary object is to equalize throughout the *several counties* of the state the burden of state taxation. So far as county taxation is concerned, it is a matter of comparative indifference whether the assessed valuation of its taxable property, as determined by the county assessor and board of supervisors, be raised or lowered by the state board of equalization, because the rate of taxation is not fixed by the supervisors until after the action of the state board. The amount of money to be taken from the pockets of the taxpayers of the county for county purposes is not thereby affected. But as to the city, in such case, any change in the assessed valuation by the state board must have one of two effects, equally intolerable; either to deprive the city government of necessary funds or give it what it neither asks nor needs, thereby unjustly adding to the burdens of its citizens. A conclusion so obnoxious and damaging to the taxpayer could be justified only by the plainest provisions of the statute. And not only are there no such plain provisions, but the entire spirit of the law negatives such conclusion. There is nothing in the case of *Baldwin* v. *Ellis,* 68 Cal. 495, [9 Pac. 652], opposed to the view here taken. Indeed the reasoning of the court in that case clearly sustains it. The court holds that the power of the state board in lowering or raising the assessment-roll applies both to state and county. Its declared object is to equalize county assessments. It is not concerned with municipal taxation and is nowhere given power or supervision over it.

"Considerations of a general character would seem to support strongly the view here taken.

"It is a familiar rule of statutory construction that it be reasonable, especially that it do not tend to palpable injus-

tice, contradiction, or absurdity. It is a cardinal rule that the language of a statute should be so interpreted as to make it compatible with common sense and the dictates of justice. If any other reasonable construction be possible, a statute should never be construed to work injustice. Justice is the aim of all legislation. The power of government to exact from the citizen a part of his property in way of taxation is indeed vast, but it is not unlimited. It may be exercised only for the public good and for a public purpose.

"Cooley's definition of taxes as 'enforced contributions levied for public needs' states concisely both the nature and limitation of taxes. Taxes are the property of the citizens demanded and taken by the government to enable it to discharge its functions. In his work on Tax Titles, Blackwell defines taxes as '*burdens* imposed by the legislative power upon persons or property to raise money for public purposes.'

"The needs of the government constitute then both the occasion and limitation of the taxing power. To take from the citizen a dollar beyond the needs of government is not taxation; it is extortion."

Appellant's counsel in his brief exhibits his usual aptitude and forcefulness, but he makes the mistake of assuming that the situation is governed by the following provisions of section 3671 of the Political Code: "The assessment made by the county assessor and that of the state board of equalization, as apportioned by the boards of supervisors to each city, town, township, school, road, or other district in their respective counties, or cities and counties, shall be the only basis of taxation for the county, or any subdivision thereof, except in incorporated cities and towns, and may also be taken as such basis in incorporated cities and towns when the proper authorities may so elect." From a consideration of the preceding section it is perfectly apparent that the reference in said section 3671 to the assessment made by the state board of equalization does not contemplate the equalization of the value of the taxable property of the state, but it signifies and points to the assessment, by said board of railroads operated in more than one county. If we should construe it as contended for by appellant we would be confronted with the embarrassing situation that the board of trustees of the

20 Cal. App.—7

city of Fresno is compelled to fix the rate of taxation upon a basis to be determined in the future. But it is clear from the record that the city authorities elected to take advantage of said act of 1895, and that act provides in unmistakable terms that the assessment made by the assessor and approved by the board of supervisors shall be the basis for taxation for city purposes. If it be conceded that said section 3671 provides a different basis it is sufficient to say that the city authorities have not elected to be bound by it, and it is entirely immaterial that it has been amended since the passage of said act of 1895.

It seems eminently just that this money, collected by the city in excess of its needs as determined by the constituted authorities, should be returned to those upon whom the unnecessary burden was imposed, and no merely technical objection should stand in the way of this consummation. Of this character we consider the other points made by appellant, and it is believed that they are devoid of substantial merit.

To read the complaint is to be convinced that it states a cause of action against the city of Fresno. It sets forth the facts recited in the opinion of the trial judge, and, if we concede that some of them are imperfectly averred, it is entirely manifest that appellant suffered no prejudice.

The cause of action is admittedly against appellant and hence the treasurer was not a necessary party defendant. By virtue of his office he was and is the custodian of the funds, but they were collected for the benefit and credited to the account of appellant. The claim was against the city and, like any other ordinary action for a debt due from the municipality, there is no apparent reason why any one except the debtor should have been sued. But it is hard to understand how the city has suffered any detriment or is in a position to complain by reason of the fact that the treasurer was joined as a party defendant. The rule is, undoubtedly, as stated in *Gardner* v. *Samuel,* 116 Cal. 84, [58 Am. St. Rep. 135, 47 Pac. 935], that "A defendant against whom there was a sufficient complaint cannot object that others who had no interest in the subject matter of the suit were made defendants, unless it also appeared that his interests were affected thereby." If defendant Hickman had appealed and were urging the point, a different situation might be presented.

In the beginning, no doubt, counsel for respondent were somewhat uncertain as to the form of proceeding that should be instituted, and a petition was filed against the treasurer for a writ of mandate to compel him to pay the claim of plaintiff. That action was numbered 14,156 and was based, probably, upon the theory that, the claim having been allowed by the board of supervisors, it was the ministerial duty of the treasurer to pay it on demand. Thereafter—we naturally infer—counsel concluded that it was not a case for mandate, but that plaintiff in an ordinary action must establish his unliquidated demand against the city, and hence this suit, No. 14,157, was brought. The foregoing circumstances have given rise to appellant's contention that another action was pending for the same cause. If the theory of plaintiff's case has been correctly stated—and it seems to be so conceded by appellant—then it is perfectly manifest that the former action was no bar to this. It is not the duty of the treasurer to pay a claim against the city, which has not been reduced to judgment and which has been rejected by the city trustees. He is a mere ministerial officer and he exercises no judicial functions. It must be plain that his election to pay or refuse payment of such claim is no legal determination of its validity nor would it be binding upon the city or the claimant. Under such circumstances, of course, no court would issue the writ of mandate, but would hold that the claimant must proceed against the city in the proper form to establish his right to the payment. The logic of appellant's position would compel the treasurer to pass upon every ordinary claim of indebtedness against the city, and thereby exercise a power far in excess of what has been conferred by the statute. No case involving the identical question has been cited, but we think none should be required. As pointed out by respondent, it has been held, in certain cases, that the pending of a civil action is not a bar to *mandamus* on the same general facts, (*County of Calaveras* v. *Brockway,* 30 Cal. 325; *Oroville and V. R. Co.* v. *Supervisors,* 37 Cal. 354; *Barber* v. *Mulford,* 117 Cal. 360, [49 Pac. 206]) ; and the converse would seem to be equally true. At least, the pendency of an action against one person upon a complaint failing to state a cause of action against said person cannot affect another suit based upon a cause of action stated against another person. The

principles of law involved are familiar and we deem the further citation of authority to the point unnecessary.

The trial court's findings were against both defendants, but no judgment was rendered either for or against Hickman, and of this appellant complains. As before indicated, we view the treasurer as an unnecessary party and the complaint as not stating a cause of action against him. It would seem to follow that he was entitled to judgment for his costs. But the appellant has not been injured by the omission of the court in that regard. If there were a question of joint liability and the right of contribution, the situation, of course, would be different. But, as we view the case, appellant alone is liable and it has no right to insist that a judgment be rendered against Hickman; and a judgment in his favor could not be invoked to mitigate the burden that the law imposes upon appellant. Hickman might complain, but it seems clear that the error, as far as appellant is concerned, is harmless and should be disregarded. (Code Civ. Proc., sec. 475.)

It is not disputed that in an action against more than one defendant the court may render judgment against only one when a several judgment is proper. It is expressly so provided in the statute. (Code Civ. Proc., sec. 579; *Kelly* v. *Bandini,* 50 Cal. 530; *Kelly* v. *Plover,* 103 Cal. 35, [36 Pac. 1020].)

But admitting in this case that Hickman was entitled to an adjudication on the issues raised by his answer, this is a matter of which his codefendant has no right to complain. (*Golden Gate Mill & Mining. Co.* v. *Hendy Machine Works,* 82 Cal. 184, [23 Pac. 45].)

The charter of the city of Fresno provides that: ''Every demand against the city treasurer . . . must be itemized, specifying the goods furnished, the service performed, or other basis of the claim, giving the date and amount of each item, and by whom ordered, and the amount of the claim, and must be verified by the oath of the claimant or some one for him having knowledge thereof to the effect that such claim is justly and wholly due and unpaid, and that each item thereof has accrued within one year next before its presentation for payment.'' We are satisfied that there was a substantial compliance with this requirement. There seems to be

no reason why the various claims could not be presented together, so long as the various facts demanded by the law were recited for the intelligent guidance of the trustees. The instrument in question here contained a very full statement of the "basis of the claim" and concluded as follows: "The names of the respective claimants and the sums in which they respectively claim that they are entitled to reimbursement are as follows:

"City of Fresno, Dr.
"For 20% excess paid upon city taxes as follows:

|  | | | | | Am't due for which reimbursement is |
|---|---|---|---|---|---|
| To:—Names. | 1st Inst. | Date | 2nd Inst. | Date. | claimed. |
| James Porteous.. | $137.79 | Nov. 6/09 | $132.88 | Apr. 20/10 | $45.11 |
| M. R. Madary... | 14.29 | Nov. 29/09 | 12.06 | Apr. 25/10 | 4.39" |

Then followed the other names with amounts and dates similarly arranged and at the bottom of the list was signed: "M. K. Harris and Milton M. Dearing, attorneys for each of said claimants," and a verification in proper form by said attorneys was attached. We think this should satisfy the most captious.

The judgment, in our opinion, should be affirmed, and it is so ordered.

Hart, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 13, 1912.