[L. A. No. 16964. In Bank. May 1, 1942.]

RANCHO SANTA ANITA, INC., Appellant, v. CITY OF ARCADIA (a Municipal Corporation), Respondent.

Stater & Dawson and Williamson, Hoge, Sargent & Judson for Appellant.

James C. Bone, City Attorney, and Burke, Hickson, Burke & Marshall for Respondent.

J. H. O'Connor, County Counsel, and S. V. O. Prichard, Assistant County Counsel, as Amici Curiae, on behalf of Respondent.

TRAYNOR, J.—Arcadia, a city of the sixth class, levies and collects its own taxes by virtue of section 871 of the Municipal Corporations Act. (Stats. 1883, p. 93; Deering's Gen. Laws, 1937, Act 5233, § 871.) In 1913 the city council adopted an ordinance providing: ''All provisions of Title IX of the Political Code of the State of California in regard to revenue and taxation which are not inconsistent with the provisions of this Ordi-

nance shall apply to and govern all matters of revenue and taxation which are not herein specifically provided for, substituting where necessary the proper city officer for any county officer therein referred to." At that time section 3714 of the Political Code, included within title IX, provided: "The Board of Supervisors of each county must, on the third Monday in September, fix the rate of county taxes, designating the number of cents on each one hundred dollars of property levied for each fund, and must levy the state and county taxes upon the taxable property of the county; provided, that it shall not be lawful for any Board of Supervisors of any county in the state to levy, nor shall any tax greater than fifty cents on each one hundred dollars of property be levied and collected in any one year, to pay the bonded indebtedness, or judgment arising therefrom, of this state, or of any county or municipality of this state." Subsequent amendments, extending the section to six and one-half pages, require each county board of supervisors to adopt a budget and to levy taxes in accordance with the budgetary requirements after all cash on hand and incoming revenues have been applied toward meeting the necessary expenditures.

In 1937 the City Council of Arcadia adopted a budget that set forth the estimated expenditures for the ensuing fiscal year, and the taxes levied by the city for that fiscal year went into the general fund, the library fund, and the bond funds. Plaintiff, an Arcadian landowner, paid its taxes under protest, and when its claim for refund was denied, brought this action in the superior court to recover a portion of the taxes. The defendant city's demurrer was sustained without leave to amend, and plaintiff has appealed from the judgment of dismissal.

Plaintiff contends that the taxes paid by it under the 1937 levy were illegal because the city council failed to consider available cash on hand and other revenue in fixing the tax rate. The complaint alleged that in view of these revenues the tax rate as fixed by the council yielded almost double the amount necessary to meet the estimated expenditures for the general and library fund and the bond obligations. Plaintiff also contends that appropriations and tax levies were made in five of the bond interest and sinking funds for purposes not authorized by law.

Title IX of the Political Code is concerned only with

state and county taxation and therefore does not apply to the defendant city except insofar as it is incorporated by reference into the city ordinance of 1913. The provisions restricting the amount of taxes to budgetary requirements were added to the Political Code subsequent to the passage of that ordinance. Plaintiff contends that the ordinance incorporated title IX not only as it then existed but as afterwards revised. It is not necessary to decide whether the city council had the constitutional authority to adopt unknown, future enactments of the state Legislature because the ordinance makes clear the council's intention to adopt article IX only as it then existed. When one statute incorporates the provisions of another by a specific reference to the title, the latter is incorporated as it then exists and not as it is subsequently modified. (*Ramish* v. *Hartwell,* 126 Cal. 443 [58 Pac. 920]; *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.,* 177 Cal. 249 [170 Pac. 426]; *Thoits* v. *Byxbee,* 34 Cal. App. 226 [167 Pac. 166]; *Culver* v. *The People,* 161 Ill. 89 [43 N. E. 812]. See *San Luis Obispo* v. *Pettit,* 87 Cal. 499 [25 Pac. 694]; *In re Yick Wo,* 68 Cal. 294 [9 Pac. 139, 58 Am. St. Rep. 12]; 2 Sutherland, Statutory Construction, (2d ed.) 787-789; and cases cited in 59 C. J. 1060.) The 1913 ordinance refers specifically to title IX of the Political Code and makes no reference to subsequent modifications. The defendant city was therefore not required to comply with those provisions of title IX adopted after 1913.

Plaintiff maintains, however, that even if defendant is not bound by the amended provisions of section 3714, the failure of the city council to take into account cash on hand and incoming revenues in fixing the taxes rendered the latter illegal. The taxing power of the city and all limitations thereon are derived from the Constitution and statutes. Article XI, section 12 of the Constitution provides: ''Except as otherwise provided in this Constitution, the legislature shall have no power to impose taxes upon counties, cities, towns or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes.'' Pursuant to this section the Legislature enacted the Municipal Corporation Law, section 862.11 of which authorizes a city of the sixth class ''To levy and collect annually a property tax, which shall not, without the

assent of two-thirds of the qualified electors of such city voting at an election to be held for that purpose, exceed one dollar on each hundred dollars. . . .'' (Stats. 1935, p. 2070; Deering's Gen. Laws, 1937, Act 5233, § 862.11.) Section 871 of the same statute provides that ''The city council shall have the power, and it shall be its duty, to provide by ordinance a system for the assessment, levy and collection of all city taxes not inconsistent with the provisions of this chapter. Nothing herein shall prevent the city council from exercising the power granted by the general laws of the State relative to the assessment and collection of taxes by county officers.'' (Stats. 1883, p. 93; Deering's Gen. Laws, 1937, Act 5233, § 871.) Other sections provide for the collection of license fees, street poll taxes, fines, penalties, and forfeitures; impose debt limitations; and require the city clerk to prepare an annual summary of receipts and disbursements for the past fiscal year. (Stats. 1883, p. 93; Deering's Gen. Laws, 1937, Act 5233, §§ 862.12, 862.9, 873, 878.) At the time of the levy in question, there was no constitutional or statutory requirement that the defendant city prepare a budget or estimate its expenditures for an ensuing fiscal year, that incoming revenues and cash on hand be deducted from anticipated expenditures, or that the tax be levied only for an amount sufficient to produce the difference between estimated expenditures and cash on hand plus anticipated income.

Article XI, section 12 of the Constitution quoted above provides that the taxing power conferred upon cities by the Legislature may be exercised only for municipal purposes, but this limitation does not require a city to spend all its tax funds during the year for which they are collected. So long as the funds are ultimately utilized for a municipal purpose, the city is free to acquire by taxation more funds than are necessary for the expenditures of any given year and thereby to accumulate a surplus available for municipal expenditures or for purposes of tax reduction in later years. (Compare Rev. & Tax. Code, § 4806.)

In the absence of constitutional or statutory limitations the amount of revenue necessary for the needs of a municipality is within the sole discretion of the legislative authorities and this discretion is not subject to judicial interference. (See cases cited in 24 Cal. Jur. 43-46, §§ 26, 27. See *Stull* v. *De Mattos,* 23 Wash. 71 [62 Pac. 451, 51 L. R. A. 892].) ''The power of courts to interfere in matters of taxa-

tion, except as permitted by statute, is limited. The courts cannot pass upon the question of the policy of a tax law or the expediency of the exercise of the taxing body or the wisdom or fairness of the method of distributing the burden of taxation where no provision of the Constitution is violated.'' (4 Cooley, Taxation, (4th ed.) p. 3220.)

The fact that the city council did adopt a budget setting forth estimated expenditures for the ensuing year did not oblige the council to levy taxes at a rate that would yield no more than was necessary to meet such expenditures. Since there was no constitutional or statutory requirement that the tax rate conform to estimated budgetary expenditures, the council was free to levy a tax that would yield a surplus. The economic and social considerations that underlie such a course of action are properly subject to legislative discretion rather than to judicial review.

In the case of *Otis* v. *Los Angeles County*, 9 Cal. (2d) 366 [70 P. (2d) 633], cited by plaintiff, a tax levy was held invalid because the county had violated Political Code section 3714. Since the defendant city is not governed by that section, the case does not apply to the present situation. *Madary* v. *City of Fresno*, 20 Cal. App. 91 [128 Pac. 340], and *Redman* v. *Warden*, 92 Cal. App. 636 [268 Pac. 686], are also distinguishable from the instant case. In the Madary case a taxpayer was permitted to recover a portion of his taxes when the State Board of Equalization increased assessed property valuations after the city had fixed its tax rate on the basis of the old valuations. The increased valuations resulted in the collection of a much higher tax than the city had intended to levy. In the Redman case a tax levy was held invalid because part of the property in the tax district was omitted from the levy, thereby increasing the tax burden upon the remainder of the property in the district. In the present case the city intended to levy the taxes in question, and there was no discrimination against any taxpayer. In the case of *Southern Service Co., Ltd.* v. *Los Angeles County*, 15 Cal. (2d) 1 [97 P. (2d) 963], this court upheld the validity of section 3804.1 of the Political Code which denies the right to recover taxes levied at an excessive rate in violation of Political Code section 3714, when the taxes are used in a succeeding year to reduce the tax levy or applied for a public purpose, thereby indicating that there are no constitutional limitations upon

the right of a city to levy taxes in excess of current fiscal requirements.

The taxes that went into bond interest and sinking funds were levied under the authority of the Municipal Bond Act of 1901 (Stats. 1901, p. 27; Deering's Gen. Laws, 1937, Act 5178), section 7 of which provides: ''The legislative branch of said city, town or municipaltiy shall at the time of fixing the general tax levy, and in the manner for such general tax levy provided, levy and collect annually each year until said bonds are paid, or until there shall be a sum in the treasury of said city, town or municipality set apart for that purpose to meet all sums coming due for principal and interest on such bonds, a tax sufficient to pay the annual interest on such bonds, and also such part of the principal thereof as shall become due before the time for fixing the next general tax levy. Provided, however, that if the maturity of the indebtedness created by the issue of bonds be made to begin more than one year after the date of the issuance of such bonds, such tax shall be levied and collected at the time and in the manner aforesaid annually each year, sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof on or before maturity. The taxes herein required to be levied and collected shall be in addition to all other taxes levied for municipal purposes, and shall be collected at the time and in the same manner as other municipal taxes are collected, and be used for no other purpose than the payment of said bonds and accruing interest.''

Plaintiff contends that under this section taxes levied by the defendant city for the payment of interest and principal on bonds may not yield more than is necessary to meet the interest and principal payments accruing during the year for which the levy is made. The provision in the section, however, that the city must levy a tax sufficient to meet the annual interest and principal payments on bonds is a minimum, not a maximum, requirement. The city must levy at least enough taxes in any given year to meet the annual interest and principal requirements, but it may, in its discretion, levy sufficient taxes to meet in whole or in part the balance of the bond issue, including both principal and interest. Its latitude in this regard is evident from the fact that no further taxes need be levied when there is a sum in the city

treasury set apart to meet all sums coming due for principal and interest on the bonds, and there is no restriction upon the right of the council to create this fund. Likewise, there is no restriction upon the amount that may be placed in the sinking fund to meet future principal payments on bonds that begin to mature more than one year after the date of issuance. Since the taxes that went into the various bond interest and sinking funds did not exceed the entire unpaid balance of principal and interest due from each fund, they were not excessive in amount even if, taking account of cash on hand and delinquent tax payments, they yielded more than was necessary to meet the annual interest and principal payments.

Included within the budget adopted by the city council was an appropriation from five of the bond funds of an amount owed to the water fund. Plaintiff contends that this appropriation and the taxes levied to meet it are in violation of the last part of the section quoted above providing that ''the taxes herein required to be levied and collected shall be . . . used for no other purpose than the payment of said bonds and accruing interest.'' The appropriation, however, simply provided for the repayment to the water fund of sums advanced from it to the bond funds. There is no allegation in the complaint that the sums advanced from the water fund were used for any purpose other than the payment of bond principal and interest. In effect the sums appropriated were used to pay bond principal and interest by repaying the advances made from the water fund for this purpose.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., and Carter, J., concurred.

EDMONDS, J., Dissenting.—I agree with the conclusion that the ordinance of the city of Arcadia did not require the city council to follow the requirements of section 3714 of the Political Code in levying its assessment for the fiscal year 1937-38 but, in my opinion, the allegations of the plaintiff's complaint clearly show that the council levied taxes at a rate designed to produce more revenue than was required for governmental purposes during the ensuing fiscal year and that such levy is void as to the excess.

In considering the validity of a tax levy, the courts will

consider two important elements: (1) whether the power exists to make the levy; and, (2) whether that power has been exercised within statutory limitations. "The authority of the judiciary is confined to an inquiry into the jurisdictional question, and if it appears that the political or legislative body has kept within the limits of its authority, the judiciary must pause there and admit its incompetency to inquire into wrongs which, within those limits may have been committed." (*San Christina etc. Co.* v. *San Francisco,* 167 Cal. 762 [141 Pac. 384, 52 L.R.A. (N.S.) 676] ; 4 Cooley's Taxation, 4th ed., p. 3218.) Unlike the sovereign state, counties and other municipal subdivisions possess no inherent power of taxation. The Constitution itself does not grant them the taxing power, but the Legislature is authorized to ". . . by general laws, vest in the corporate authorities thereof the power to assess and collect taxes. . . ." for county, city, town, or other municipal purposes. (Const. art. XI, § 12.) Pursuant to this constitutional authority, the Legislature has authorized the council of a city of the sixth class "To levy and collect annually a property tax, which shall not, without the assent of two-thirds of the qualified electors of such city voting at an election to be held for that purpose exceed one dollar on each one hundred dollars. . . ." (Stats. 1935, p. 2070; Deering's Gen. Laws, 1937, Act 5233, § 862.11.)

By the same statute, "The city council shall have the power, and it shall be its duty, to provide by ordinance a system for the assessment, levy and collection of all city taxes not inconsistent with the provisions of this chapter. Nothing herein shall prevent the city council from exercising the power granted by general laws of the state relative to the assessment and collection of taxes by county officers." (§ 871.)

The specifically mentioned general limitations upon municipal power to tax are (1) that the municipal levy be annual; (2) that in the absence of special election, the maximum levy shall not exceed one dollar for each one hundred dollars assessed value; and (3) that a system shall be established by ordinance for the assessment, levy and collection of such taxes.

But in addition to these express provisions is the limitation inherent in the nature of the taxing power itself, that is, public necessity. "Taxes are defined to be burdens or charges imposed by the legislative power upon persons or property,

to raise money for public purposes. The power to tax rests upon necessity, and is inherent in every sovereignty.'' (Cooley's Constitutional Limitations, vol. 2, 8th ed., p. 986.) And as an eminent authority on municipal corporation law has stated: ''. . . the substantial foundation of the power is political, civil, or governmental necessity. . . .'' (Dillon, Municipal Corporations, vol. 4, 5th ed., pp. 2313, 2314.)

This inherent limitation upon the taxing power of municipal corporations has been recognized by the courts of this state and stated in one case as follows: ''The power of government to exact from the citizen a part of his property in way of taxation is indeed vast, but it is not unlimited. It may be exercised only for the public good and for a public purpose.

''Cooley's definition of taxes as 'enforced contribution levied for public needs' states concisely both the nature and limitation of taxes. Taxes are the property of the citizens demanded and taken by the government to enable it to discharge its functions. In his work on Tax Titles, Blackwell defines taxes as *'burdens* imposed by the legislative power upon persons or property to raise money for public purposes.'

''The needs of the government constitute then both the occasion and limitation of the taxing power. To take from the citizen a dollar beyond the needs of government is not taxation; it is extortion.'' (*Madary* v. *City of Fresno,* 20 Cal. App. 91, 97 [128 Pac. 340, 343].)

In a more recent case, the county of Los Angeles contended that a levy which produced considerably more money than its budget requirements was not *pro tanto* invalid in the absence of arbitrary or capricious action. Following the Madary case and *Redman* v. *Warden,* 92 Cal. App. 636 [268 Pac. 686], this court decided to the contrary and held that where the taxing body, either through inadvertence or design, excludes from its computations amounts which will be available to the municipality during the period then being provided for, an excessive levy resulting from such action is invalid. (*Otis* v. *Los Angeles County,* 9 Cal. (2d) 366 [70 P. (2d) 633].) Although that determination was reached in an attack upon an assessment which was levied in a county operating under the provisions of section 3714 of the Political Code, the reasoning of the court is applicable to the present controversy. All of the authorities support the rule that where there has been an official determination of governmental need by the legis-

lative body, an assessment levied at a rate which will produce a return substantially in excess of that previously determined need is, to the extent of that excess, invalid. As stated in *Madary* v. *City of Fresno, supra,* at p. 98, and approved in *Otis* v. *Los Angeles County,* "It seems eminently just that this money collected by the city in excess of its needs as determined by the constituted authorities, should be returned to those upon whom the unnecessary burden was imposed, and no merely technical objection should stand in the way."

As the basis of its cause of action, the appellant in the present action alleged: "That the needs and requirements of the city general fund, being the fund for current operating expenses and general government purposes, for the fiscal year 1937-1938 was the sum of $141,061.14; that the taxing officials and taxing body of said city determined and fixed such needs, requirements and appropriations in such amount on or about the 7th day of September, 1937; that on said date resolution No. 878 of the city of Arcadia, entitled, 'A resolution of the city council of the city of Arcadia adopting budget for the fiscal year 1937-1938,' was adopted and by such resolution the needs, requirements and appropriations for said fund for said fiscal year were fixed and determined in the aforesaid amount of $141,061.14. . . ." This resolution constituted the official determination of the city's governmental need, as specified in a budget, so far as its current operating expenses and general governmental purposes were concerned, entirely independent of any unappropriated money in its treasury, and there is no basis for any judicial implication that the council considered the cash on hand as a necessary reserve. Such an implication would invade the discretion vested in the city council.

The complaint also includes these additional facts upon which the appellant relies: "That at the beginning of said fiscal year there was cash on hand on deposit in the designated depositories, belonging to the credit of said fund for said fiscal year, in the sum of $92,720.13; that there were no legal or valid outstanding claims, warrants, liabilities or obligations against said cash or fund balance . . . that the said cash or fund balance was available for the purpose of meeting the said appropriations, needs or requirements aforesaid . . . that at the beginning of said fiscal year, as well as at the time of levying said tax, the taxing officials of said city knew and

were charged with knowledge of such cash or fund balance, and knew and were charged with knowledge of the availability thereof to meet the said needs, requirements and appropriations aforesaid; that, however, the said cash or fund balance was not considered either in the adoption of said budget nor in the computation, fixing and levying of said tax, but was arbitrarily omitted.''

Other allegations of the complaint are that there was miscellaneous income and revenue belonging to said fund for the fiscal year in question of $56,334.58, against which there were no outstanding obligations, warrants or liabilities. And the appellant has pleaded that no part of the cash on hand or the miscellaneous income and revenue was considered either in the adoption of the budget or in the computation of the tax rate.

The doctrine that taxation is based upon necessity rejects the authority of the legislative body to accumulate unnecessary surpluses from taxes collected by municipal corporations, and requires that they confine their levies to the amounts actually needed to be determined annually. (*People* v. *Baltimore & O. R. Co.*, (1941) 376 Ill. 393 [33 N. E. (2d) 604, 605].) This principle was recognized in *Stuart Arms Co.* v. *San Francisco*, 203 Cal. 150 [263 Pac. 218], where the court, in effect, held that any excess funds collected during one fiscal year should be carried over into the next fiscal year and considered in the computation fixing the rate for such year. The controversy decided by that case arose in connection with the levy made by the city and county of San Francisco for the fiscal year 1925-1926. At that time there were no mandatory budget provisions in section 3714 of the Political Code. Since two and one-half fiscal years had intervened subsequent to the filing of the action, said this court, the question was moot by lapse of time. ''If there was an excess for the year 1925-1926 the presumption is that it was carried over into the next year and entered into the computation of the fixing of the rate for said following year. No presumption of irregularity or failure to perform official duty may be indulged against municipal or public officers.''

The Supreme Court of Washington has also held taxing authorities to the same rule, saying: ''It is to be considered also that, apart from the creation of sinking funds to meet outstanding funded obligations, there is no need for the accumulation of a surplus, since the resource of taxation is

always available within the limitations fixed by law to meet the current needs of the county. In short, any considerable surplus represents money taken from the taxpayer in advance of its need.'' (*Weyerhaeuser Timber Co.* v. *Roessler,* 2 Wn. (2d) 304, 311 [97 P. (2d) 1070, 1073, 126 A. L. R. 882, 886].)

Accepting the determination of the city council as to the gross amount required for general and library purposes during the fiscal year, so far as the complaint shows, there is no reason why the unappropriated money and incoming revenues should not have been taken into consideration by the city council in fixing the tax rate. Reserves are justified by sound business practices and recognized by law. But for a municipality to tax its citizens for the purposes of government while having in its treasury unappropriated money available to meet its needs and revenues presently available is economically unsound and governmentally unjust.

Turning to the allegations relating to the levy for bond purposes, it appears that the city has six bond issues outstanding and maintains a separate fund for the payment of interest and principal payments accruing on each of them. The complaint sets out in detail the amount of cash in each of these funds and the incoming revenue creditable during the fiscal year 1937-1938. According to the complaint, neither the cash nor the incoming revenue was considered by the city council in fixing the tax levy and, for the reasons which have been stated, the appellant's complaint, in my opinion, states a good cause of action upon that ground.

In urging that the city exceeded statutory limitations in its levy, the appellant relies upon the Municipal Bond Act of 1901 which provides that a municipal legislative body has power to levy and collect ''a tax sufficient to pay the annual interest on such bonds, and also such part of the principal thereof as shall become due before the time for fixing the next general tax levy.'' (Stats. 1901, p. 27; Deering's Gen. Laws, 1937, Act 5178, § 7.) The statute also provides that the taxes levied and collected for the purpose of meeting interest and sinking fund requirements on bond issues shall be used ''for no other purpose than the payment of said bonds and accruing interest.'' (§ 7.)

Unquestionably these limitations upon the authority of the city were enacted for the protection of both the property owner and the bond holder. Taxes may be levied for the pur-

pose of paying interest and instalments of principal upon the bonds, but that money may not be diverted into other channels. I believe that the appellant's allegations of fact showing a violation of this statute state a cause of action.

For these reasons, as I read the authorities, the judgment should be reversed with directions to overrule the demurrer and allow the respondent to answer.