[No. 27869. *En Banc.* January 19, 1940.]

WEYERHAEUSER TIMBER COMPANY, *Appellant,* v. O. W. ROESSLER, *as Assessor of Pacific County, et al., Respondents.*[1]

[1]Reported in 97 P. (2d) 1070.

*W. E. Heidinger* and *T. J. Hanify,* for appellant.

*John T. Welsh, H. C. Brodie,* and *Charles Blake Welsh,* for respondents.

*Ralph E. Foley, Harvey Erickson, Thor C. Tollefson, Ralph Wilkinson, Glenn L. Bean, Lowell B. Vail, Robert J. Murray, F. Leo Grinstead, Lloyd L. Wiehl, D. W. Zent, R. L. Ponder, S. J. Krause,* and *R. M. Wright, amici curiae.*

GERAGHTY, J.—This action was instituted by the plaintiff, Weyerhaeuser Timber Company, owner of real and personal property in Pacific county, to enjoin the assessor of that county from extending upon the tax rolls the tax levy made by the board of county commissioners for the year 1940. After institution of the action, the county commissioners intervened. The trial resulted in a denial of the injunction and a decree dismissing the action. The plaintiff appeals.

While the complaint prayed for an injunction against the levy as a whole, the controversy here involves only the levy made for the current expense fund, being

5.63 mills. The remainder of the ten-mill levy permitted to counties by the forty-mill law was levied for specific purposes made mandatory by statute. The budgeted expenditures payable out of the current expense fund for the year 1940 amount to $110,051.39. These authorized expenditures were to be met by budgeted resources as follows: Revenue from sources other than taxation, $36,000; to be raised by the 5.63 mill levy for the current expense fund, $55,037.49; and $19,013.90 to be transferred from a cash balance of $65,286.95, then in the current expense fund. After deducting the latter amount, there would remain in the current expense fund, $46,273.05, and it is conceded that this sum would be in the fund January 1, 1940.

It appears from an exhibit in the record that, in arriving at the cash balance in the fund, all outstanding warrants chargeable against it were deducted. At the time the budget was made, there was in existence in the county treasury a sinking fund created for the retirement of an issue of road bonds. It is admitted that there was in this fund, at the time of the levy, $41,279 in cash, while there were outstanding, chargeable to the fund, bonds in the sum of $9,000 only, and these were payable July 1, 1940.

It is the appellant's contention that the whole of the cash balance in the current expense fund, together with the sum of $32,279 in the bond fund, in excess of its requirements, should have been used by the county commissioners in balancing the budget for the year 1940, thereby obviating the necessity for making any tax levy for the current expense fund.

The respondents, on the other hand, contend that the county was faced, sometime in the future, with the necessity of meeting some heavy expenditures that would require the use of the surplus in the current

expense fund, such as the cruising of large tracts of timber lands of the county for determining their value for taxation purposes and the making of extensive repairs to the courthouse. There was also a possibility that the county might be called upon to meet a contingent claim made by the state for the care of indigent insane. None of these expenditures, however, was budgeted as expenditures contemplated in the year 1940. In reference to the balance in the bond fund, the county contends that this was not an available surplus because of a statutory limitation on the use of the fund, to which we shall hereafter refer.

█ While the power to levy taxes is an inherent attribute of sovereignty, there is implicit in the constitutions of all free governments the limitation that the property of the citizen may be taken from him under the guise of taxation only to meet definite public needs. This general principle finds concrete expression in Art. VII, § 1, of our own state constitution:

"The legislature shall provide by law for an annual tax sufficient, with other sources of revenue, to defray the estimated ordinary expenses of the state for each fiscal year. And for the purpose of paying the state debt, if there be any, the legislature shall provide for levying a tax annually, sufficient to pay the annual interest and principal of such debt within twenty years from the final passage of the law creating the debt."

█ Unlike the sovereign state, counties and other municipal subdivisions possess no inherent power of taxation. The constitution itself does not grant them the taxing power, but, by Art. VII, § 9, the legislature is authorized to vest them with this power; "For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes . . . ."

█ It is seen that this broad delegation of power

to the legislature is circumscribed by the limitation that the taxes to be levied must be for "corporate purposes," and this implies, of necessity, that the corporate purposes for which the levy is made must be, in some manner, definitely expressed. But the legislature, in authorizing the subordinate taxing districts to levy taxes, has seen fit to hedge the power about with other restrictions calculated to protect the taxpayer against abuse of the power by unnecessary or excessive exactions.

The county budget law, Laws of 1923, chapter 164, p. 523 (Rem. Rev. Stat., §§ 3997-1 to 3997-10 [P. C. §§ 1652-1 to 1652-10], inclusive), outlines the conditions under which the counties may levy taxes and is an express limitation upon the power vested in them. The budget process provides for submission to the county auditor of statements by the several offices and departments of the county government showing detailed itemized estimates, both of the probable revenues from sources other than taxation and of all expenditures required for the ensuing fiscal year. On receipt of these estimates, the auditor is to prepare the preliminary county budget, setting forth the complete financial program of the county for the ensuing fiscal year, showing the expenditure program and the sources of revenue by which the program is to be financed.

The revenue section of the budget to be prepared by the auditor is to set forth, among other things, "the *estimated surplus* at the close of the current fiscal year and the amount proposed to be raised by taxation." (Rem. Rev. Stat., § 3997-2 [P. C. § 1652-2].) The budget so prepared is submitted to the county commissioners, who are required to consider it in detail, making such additions or revisions as they may deem advisable, after which notice is published of the day

on which the commissioners will meet for the purpose of fixing the final budget and making the tax levy. At the conclusion of this final hearing, and after they have determined each item of the budget separately and entered the same in detail in the official minutes of the board,

"The county commissioners shall then fix the amount of the levies necessary to raise the amount of the estimated expenditures as finally determined, less the total of the estimated revenues from sources other than taxation including *available surplus* and such expenditures as are to be met from bond or warrant issues. . . . " (Italics ours.) (Rem. Rev. Stat., § 3997-4 [P. C. § 1652-4].)

We take the fair import of the budget law to be that it does not contemplate the accumulation in the current expense fund of a surplus in excess of the current needs as reflected by budgeted expenditures. We need not go far afield for a definition of the term "available surplus." In the light of the budget plan, its obvious meaning is that any cash surplus remaining in the current expense fund at the beginning of the fiscal year, after payment of all outstanding obligations against the fund, is available.

In reference to the amount in the road-bond fund in excess of nine thousand dollars, the sum required to retire the bonds at their due date, July 1, 1940, we are of the opinion that this also is to be considered as available surplus. The county contends that, since this money was raised for payment of the bond issue, it cannot, under the law, be used for any other purpose.

The pertinent statutory provision in relation to this fund is found in Rem. Rev. Stat., § 5594 [P. C. § 5424], and reads:

"The county commissioners must ascertain and levy annually a tax sufficient to pay the interest on all such bonds whenever the same becomes due. At least five years prior to the maturity of such bonds and thenceforward in each year until their maturity, the county commissioners must ascertain and levy a tax *sufficient to accumulate during such series of years a fund equal to the principal sum of all such bonds then remaining outstanding and unpaid,* and the amount of such tax as collected shall be by the county treasurer credited to a special fund for the payment of the principal of such bonds . . . and no part of said fund shall be diverted to any other purpose than the payment of such principal." (Italics ours.)

Thus, it is seen that the county must have levied largely in excess of the requirements of the fund or the mandate of the statute. But assuming that the money in the fund can be used for no purpose other than payment of the bonds, what is to become of the surplus of thirty-two thousand dollars left over? If it cannot be diverted to any other use, it should be returned to the taxpayer from whom it was taken. And this is precisely what the budget law requires to be done with it; it is to be returned to the taxpayer by the process of inclusion in the budget set-up, thereby reducing the current levy upon his property. It cannot be reasonably contended that there is no surplus in the fund until after the whole of the bonds are paid. The surplus was in existence at the time the levy was made and readily ascertainable with certainty.

We do not question the motives of the officials of Pacific county; indeed, it is much to their credit that they have not yielded to the temptation of spending this relatively large accumulated surplus for extravagant or unnecessary purposes. It would redound to the credit of the management of a private corporation that it had accumulated a surplus to meet future con-

tingencies. But we are here considering positive rules which the law-making power has, in its wisdom, imposed on public officials for the protection of the citizen against unnecessary tax levies. It is to be considered also that, apart from the creation of sinking funds to meet outstanding funded obligations, there is no need for the accumulation of a surplus, since the resource of taxation is always available within the limitations fixed by law to meet the current needs of the county. In short, any considerable surplus represents money taken from the taxpayer in advance of its need. The budget plan is that this money is to remain in the taxpayer's pocket, from which it may be withdrawn by the process of taxation, as and when required.

As the trial court stated in announcing its decision, the question of the timeliness of the action brought by the appellant was not pressed below because of the desire of the parties for a decision on the merits; we are not, therefore, passing upon the question here. But the respondents do urge that the appellant is estopped by certain representations made by its agent to the commissioners while the budget and levy were under consideration.

While the appellant was seeking to have a larger portion of the surplus included in the budget as a resource, and might have been satisfied with the inclusion of less than all, we do not conceive that it was thereby estopped from insisting that the commissioners obey the mandatory requirements of the law in the preparation of the budget.

■ Our conclusion is that, since the revenue from sources other than taxation, added to the available surplus as of January 1, 1940, was more than sufficient to meet all of the budgeted expenditures of the county for the year 1940 payable out of the current expense fund, the commissioners were not authorized

to make any levy for that fund. The decree of the lower court is therefore reversed, and the cause is remanded with direction to enjoin the levy for the current expense fund.

STEINERT, JEFFERS, ROBINSON, and SIMPSON, JJ., concur.

BEALS, J. (concurring in part)—I am in accord with the opinion of the majority in holding that the entire balance of something over sixty-five thousand dollars remaining unexpended in the current expense fund should be carried over as available surplus into the current expense fund for the succeeding year. I agree with the opinion of the majority on this phase of the case, and in the discussion of the so-called budget law.

I am, however, of the opinion that the money in the road-bond fund should remain in that fund until all of the outstanding bonds are paid. As to whether the surplus which will remain in the fund after liquidation of the bonds should then be transferred to the current expense fund as available surplus, or in some way made available to the taxpayers whose money created the fund, I express no opinion. In any event, the balance in the fund would not be available for un-budgeted expenditures on order of the county commissioners.

The judgment appealed from should be reversed, and the cause remanded with directions to enjoin any levy in excess of an amount reasonably necessary to raise sufficient money to meet the expenditures provided for in the budget as adopted by the county commissioners.

MAIN, J. (dissenting)—I am unable to concur in the majority opinion in this case.

The appellant, Weyerhaeuser Timber Company,

owns a very considerable amount of taxable, unplatted real estate, together with a certain amount of taxable, platted real estate, and some personal property, in Pacific county. The real estate is largely if not entirely, either timber land or land from which the timber has been logged.

At the time the commissioners were considering the budget for the year 1940, they considered the matter of having a cruise of the timber land of the county which had not been cruised since the year 1908, the cost of which, it was estimated, would be about forty thousand dollars or more. It was testified in this case that such a cruise would result in increasing the taxable value of such land. They also took into consideration the matter of repairs to the courthouse, and budgeted for that purpose the sum of forty-five hundred dollars. But this was less, by several thousand dollars, than the necessary repairs would cost. Another matter taken into consideration was a claim by the state against the county for taking care of the indigent insane, which, by the first of the year 1940, would equal about nine thousand dollars. In another county of the state, the right of a state to collect from the counties for taking care of the indigent insane was in litigation and had not been determined at the time the budget was made up. Further than this, the taxes, as levied, are, as a rule, not all paid or collected. In Pacific county, the percentage of collections, over a period of years, averages something like seventy per cent to eighty-four per cent.

Some years ago, the county issued and sold certain road bonds upon which the final payment of principal and interest would be due July 1, 1940. The amount of money which would be necessary to take up the bonds remaining unpaid would be approximately nine

thousand dollars, leaving an approximate balance of thirty-two thousand dollars in the redemption fund.

I admit (a) that the power to tax is a delegated power; (b) that no implications are to be read into the statute giving the power; and (c) that a levy made in violation, or without authority, of law is void.

As I view it, the first question is whether the commissioners had any authority to make a tax levy for the current expense fund so long as there was a cash surplus in that fund. The appellant contends that the tax levy is irregular and void, to the extent of this unappropriated surplus. The respondents contend that the commissioners, in making the tax levy, have a right, so long as they use good business judgment and exercise a sound discretion, to anticipate future obligations which cannot be definitely determined at the time.

Rem. Rev. Stat., § 3997-4 [P. C. § 1652-4], which is one of the sections of the budget law, makes it the duty of the county commissioners to meet on the first Monday in October of each year, after having given the notice therein provided for, for the purpose of holding a hearing, and, after such hearing, determine the amount of the budget and fix the levy. It is provided in that statute that the commissioners shall, after the hearing, fix the amount of the levies necessary to raise the amount of the estimated expenditures, as finally determined, "less the total of the estimated revenues from sources other than taxation including available surplus . . ."

The words here for construction are "available surplus." As already indicated, the appellant is of the view that, so long as there is such surplus, that surplus must be exhausted before a tax levy can be made. Had the legislature intended to make it mandatory that the surplus be used, it undoubtedly would have made use of some such expression as "including all surplus" in-

stead of saying "available surplus," or the expression used by the legislature of the state of Oklahoma (Oklahoma Statutes Annot., Title 68, 240, § 290), "any cash surplus balance." The use of the word "available" is qualifying, and leaves the question as to what is an available surplus open for determination. This, of course, must, of necessity, be determined by the commissioners when they come to make the tax levy and determine the amount of the expenditures for the next year. It is a well-established rule that the taxing authorities, in making a levy, may take into consideration the needs of the county and provide for maintaining a balance in the treasury sufficient at all times to meet current claims upon it. Courts will not disturb their findings so long as they use good business judgment and exercise a sound discretion.

In 3 Cooley on Taxation (4th ed.), 2088, § 1031, it is said:

"In fixing the amount or rate, the levying body has considerable discretion. The rate necessary to produce the amount required is largely within the discretion of the levying officers, since it is uncertain what the deficiencies in collection will amount to. But while local authorities have a reasonable discretion in providing in advance for necessary taxes, the courts may interfere if the discretion is abused by raising taxes faster than they are needed. A levy for future needs is invalid as excessive only when so excessive as to show a fraudulent purpose in making the levy."

In *People v. Chicago & E. I. R. Co.,* 306 Ill. 402, 138 N. E. 127, it is said:

"Taxes should not be levied for the unnecessary accumulation of funds or for remote contingencies which may never occur, but the question of the proper amount of taxes to be raised for current county expenses is committed to the reasonable discretion of the county board, and the courts will only interfere to prevent a clear abuse of this discretion. (*People v. Atchison,*

*Topeka and Santa Fe Railway Co.,* 261 Ill. 33.) The presumption is that the county board has properly discharged its duty, and the mere circumstance that in estimating in advance the amount that may be necessary to be levied, an amount greater than that actually required has been determined upon, is no defense to a taxpayer in refusing to pay his taxes unless the amount levied is so grossly excessive as to show a fraudulent purpose in making the levy. (*People v. Chicago and Alton Railroad Co.,* 257 Ill. 208; *People v. Sandberg Co.,* 277 id. 567.) Since only $80,964.05 was available for county purposes, the levy of $101,050 for all purposes for the ensuing year, which did not appear to be of itself excessive, cannot be regarded as unreasonable. The county board has the right to provide for maintaining a balance in the treasury sufficient at all times to meet all current claims upon it, and it cannot be said that the levy in question was not justified by sound business judgment."

In *People v. South Dearborn Street Corp.,* 363 Ill. 286, 2 N. E. (2d) 68, it is said:

"It was their duty [the board that makes the levy] to exercise sound business judgment in anticipating the immediate financial requirements of the district as well as to be fortified against the day when the financial demands against the district accruing within the near future should be met."

I see nothing in the budget law (Rem. Rev. Stat., §§ 3997-1 to 3997-10 [P. C. §§ 1652-1 to 1652-10]) which justifies a conclusion that that law does not permit the commissioners to create a surplus so long as it uses good business judgment and exercises a reasonable discretion. If it were not for the surplus in the current expense fund when the levy in question was made, the county, before the year was out for which the taxes were being levied, would be compelled to go on an emergency warrant basis, because there was to be raised by taxation for the current expense fund $55,037.49. The tax levy of 5.63 mills would only

produce $46,023.59. It was to make up this difference that the commissioners transferred from the surplus fund to the current expense fund the sum of $19,013.90. Even on this basis, if there were no surplus, there would not be sufficient to pay the operating expenses of the county unless the taxes levied would be paid one hundred per cent. The evidence shows that, in Pacific county, over a period of years, the collections have amounted to from seventy to eighty-four per cent. If the county should be called upon to pay the demand of the state for the indigent insane in the sum of nine thousand dollars, again it would be necessary to issue warrants, unless there was a sufficient amount left in the surplus fund to take care of that item.

At the time the commissioners made the levy, they considered the matter of cruising the timber land of the county, and the evidence showed that, if this were done, the assessed value of the property in the county would be increased. This item, if carried out, would cost something like forty thousand dollars. It is apparent that, if there is no surplus, the county at no time would be able to levy a tax sufficient to cause a cruise of the timber land therein. It cannot be said that, if the county issued emergency warrants to make up any deficit, it could take care of them next year, because its levying power the following year could not be looked to as creating a fund sufficient to carry on the operations of the county and pay the emergency warrants issued the previous year. If the county were forced on a warrant basis, it would not only increase the expense on account of the interest on the warrants, but would tend to impair the credit of the county, which, of course, is something not to be desired. If this condition continued, the result could only be a bond issue to take care of obligations which could not be taken care of by taxation, because the county, by

the forty mill law (Laws of 1939, chapter 2, p. 5, Rem. Rev. Stat. (Sup.), § 11238-1c), is not permitted to make a levy of more than ten mills. As above seen, after the mandatory levies are made, there remain for the current expense fund levy only 5.63 mills.

I cannot escape the conclusion that, if the legislature had intended to put the counties of this state in any such position, they would have made their intention plain by unequivocal language, and not left it to what might be said to be the import of the law. I see no basis for holding in this case that the commissioners should have used the surplus in the current expense fund before making a levy.

The appellant also contends that the thirty-two thousand dollar balance in the bond redemption fund should be considered as available surplus. The bonds involved were issued under the authorization in chapter 25, Laws of 1913, p. 62 (Rem. Rev. Stat., § 5592 [P. C. § 5422] *et seq.*). It is there made the duty of the commissioners, at least five years prior to the maturity of such bonds, and thenceforward in each year until their maturity, to ascertain and levy a tax sufficient to accumulate, in such series of years, a fund equal to the principal of all bonds then remaining outstanding and unpaid and the interest,

". . . and the amount of such tax as collected shall be by the county treasurer credited to a special fund for the payment of the principal of such bonds, which shall be designated 'Road Bonds of............................ Sinking Fund,' (the blank to be filled by inserting the year in which the bonds are issued), and no part of said fund shall be diverted to any other purpose than the payment of such principal. . . ." Rem. Rev. Stat., § 5594 [P. C. § 5424].

Here is an express prohibition against using the fund for any other purpose. So long as any portion of the

bonds and interest remains unpaid, the commissioners were justified in refusing to treat the fund as an available surplus and dispose of it accordingly. What disposition may be made of the surplus after the bonds are fully paid, is a question not now to be considered.

It is my view that the decree appealed from in this case should be affirmed. I therefore dissent.

BLAKE, C. J., and MILLARD, J., concur with MAIN, J.