[No. 30130. *En Banc.* March 13, 1947.]

PACIFIC FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION, *Respondent,* v. PIERCE COUNTY *et al., Appellants.*[1]

[1]Reported in 178 P. (2d) 351.

*Teats & Teats, Metzger, Blair, Gardner & Boldt, Thor C. Tollefson, Theo. L. DeBord,* and *Patrick M. Steele,* for appellants.

*Metzler, McCormick & Metzler, Eisenhower, Hunter & Ramsdell,* and *Gersham C. Rowland,* for respondent.

*Robert S. Macfarlane, Dean H. Eastman, J. N. Davis, Charles F. Hanson, Thos. Balmer, A. J. Clynch, R. Paul Tjossem,* and *Merritt, Summers & Bucey, amici curiae.*

SIMPSON, J.—This action was instituted in the superior court by plaintiff on its own behalf and for fifty-eight other corporate and individual taxpayers of Pierce county, for the recovery of tax payments for the year 1944, paid under protest.

The essence of plaintiff's action, is contained in the following portions of its complaint:

"IV. That on or before the 5th day of October, 1943, the defendant, Port of Tacoma, by and through its commissioners, prepared and adopted their budget for estimated expenditures for the ensuing year in the sum of $832,203.98; that in said budget they estimated their revenue and income

from sources other than taxes to be in the sum of $467,735.36 which thereby left a deficit of $364,468.62; that in considering their estimated revenue and income from other sources other than taxes in the preparation of said budget, they arbitrarily, unnecessarily, and unlawfully refused, failed and neglected to include therein or to take into account the sum of $250,000.00, or more, available surplus which they well knew at the time of making said budget would be available to said defendant, Port of Tacoma, and which sum was, in fact, available to said defendant for its use during the ensuing year.

"V. That by reason of such arbitrary, unnecessary and unlawful act in failing and refusing to take into consideration said available cash surplus in adopting said budget, said defendants arbitrarily, unnecessarily and unlawfully caused a levy to be made on the real and personal property in said taxing district for the full sum of $364,468.62, being 4.25 mills upon the dollar of the assessed valuation of said property; that said levy is unlawful, unnecessary and excessive to the extent of $250,000.00 or more, which excessive levy is approximately 3 mills on the assessed valuation of all taxable property within said district."

The assignments of error call in question the action of the trial court in granting recovery to respondent.

The cause was presented to the superior court upon an agreed statement of facts, which may be summarized as follows: October 5, 1943, the port commissioners of the port of Tacoma adopted their resolution numbered 701. The resolution approved a budget for the port for the year 1944. The total expenditures were estimated to be in the sum of $832,203.98, and the total revenues were estimated to be in the amount of $467,735.36, which necessitated the raising of $364,468.62 by tax levy. At the time the resolution was passed, the port commissioners knew that they would have on hand at the end of the year, a surplus of $250,000. The commission planned and contemplated that the $250,000 would be held available for use and used for port purposes not listed or included in the expenditures set forth in the budget resolution.

In the operation of the port, it is necessary to have substantial sums of money available for use as working capital. In 1944, it was necessary that the amount of working capital

be in excess of normal requirements as a result of war conditions. All movements of property and materials through the facilities of the port of Tacoma were in complete control of the Federal government and its agencies. This situation was expected to continue, and, for that reason, there was a longer than ordinary time interval elapsing between the expenditures by the port of Tacoma of money for labor, freight advances, and other operating expenses in handling such commerce, and receipt of payment therefor from government agencies.

Because of regulatory controls and unavailability of labor and materials, there was a considerable deferred maintenance on the physical properties. It was also thought necessary that new equipment be acquired and some existing equipment be replaced, to handle the anticipated movement of heavy military material and to operate the facilities of the port of Tacoma to its full capacity. The commissioners had been advised by military authorities that, with the shift in emphasis of the war to the Pacific theatre, the port of Tacoma must be prepared to put its properties in condition to operate at full capacity. The exact time, however, when this condition would come about was unknown and could not be ascertained, but might have been within ninety days, nine months, or any other period of time from and after the sixth day of October, 1943.

It has been the uniform practice of the commission not to include surpluses expected to be on hand at the close of the current year in preparing estimates of expenditures and revenues for the succeeding year. In order to raise the amount of $364,468.62, 4.25 mills were assessed against the taxable property in Pierce county, as shown below, the total valuation of the taxable property in Pierce county being $85,757,323.

| | |
|---|---|
| Millage for port bond interest fund | 2.25 |
| Port of Tacoma fund millage | 2.00 |
| Total millage | 4.25 |

Appellant takes the position that there is no statutory budget act applicable to port districts; that, in any event,

there is no statutory provision applicable to port districts regulating the contents of the budget or requiring specific treatment of "surplus," "probable surplus," or "available surplus"; that within the millage limitations of Rem. Rev. Stat., § 9692, now Rem. Supp. 1943, § 9692 [P.P.C. § 777-19], taxes shall be levied for port districts by the county commissioners in such amounts as will raise the amount of revenues that the port commission estimates and certifies to the county commissioners is necessary; that such estimates and the resulting tax levies are illegally excessive only when so excessive as to be constructively fraudulent; that respondent raised no such issue in this case, and the undisputed facts preclude such an issue; that whatever process the port commission may adopt in arriving at its estimate of the amount of revenue necessary to be raised by taxation, whether by adoption of a budget either written or oral, or in some other manner, is a matter of internal management and of no concern to any taxpayer so long as the end result, that is, the amount estimated and certified to the county commissioners as required to be raised, is not illegally excessive.

Respondent contends that a port district cannot circumvent the limitations upon its taxing powers by wilfully omitting from its estimated revenues, in preparing its annual budget, an available cash surplus held in reserve, on the pretense of using that cash fund for indeterminate possible future port improvements and uses.

As a preliminary to a consideration of the applicable statutes, it is well to bear in mind the following rules that must be taken into consideration in the interpretation of statutes relating to taxation by municipalities.

The general rule is that the creation of a cash surplus by a taxation agency violates sound public policy and the spirit and theory of laws relating to taxation.

In speaking of available surplus as contained in the budget law, we had the following to say in *Weyerhaeuser Timber Co. v. Roessler*, 2 Wn. (2d) 304, 97 P. (2d) 1070, 126 A. L. R. 882:

"We take the fair import of the budget law to be that it

does not contemplate the accumulation in the current expense fund of a surplus in excess of the current needs as reflected by budgeted expenditures. We need not go far afield for a definition of the term 'available surplus.' In the light of the budget plan, its obvious meaning is that any cash surplus remaining in the current expense fund at the beginning of the fiscal year, after payment of all outstanding obligations against the fund, is available."

In *People ex rel. Schaefer v. New York C. & St. L. R. Co.*, 353 Ill. 518, 187 N. E. 443, a contest was had over the accumulation of funds in a levee and sanitary district. The court found that there was a large surplus beyond the ordinary requirements for the year and that the levy was probably unnecessary. In passing upon the issue presented, the court had this to say:

"In levying taxes there is but one thing to be considered by the levying officers—*i. e.*, the matter of raising the amount necessary to meet the requirements of expenditure. The amount of money on hand and in the process of collection should be considered. (*People v. Chicago and Alton Railroad Co.*, 324 Ill. 179.) The unnecessary accumulation of money in the public treasury is unjust to the people because for a considerable period it deprives them of the use of the money taken from them, and it is impolitic, as it may tempt those having the custody of funds to use them improperly. It is against the policy of the law to raise taxes faster than they are likely to be needed."

█ It is the law of this state that, in case of doubt, taxing statutes are construed in favor of the taxpayer and against the taxing power. *Union Trust Co. v. Spokane County*, 145 Wash. 193, 259 Pac. 9; *Denny v. Wooster*, 175 Wash. 272, 27 P. (2d) 328; and *State ex rel. Tacoma School Dist. v. Kelly*, 176 Wash. 689, 30 P. (2d) 638.

█ It is elementary that municipal corporations secure their right, not only to tax, but assess, from express legislative authority, which in turn derives its warrant from our state constitution. *State ex rel. Tacoma School Dist. v. Kelly, supra; Great Northern R. Co. v. Stevens County*, 108 Wash. 238, 183 Pac. 65; *State ex rel. Taylor v. Superior Court*, 2 Wn. (2d) 575, 98 P. (2d) 985.

■ Municipal authorities cannot exercise powers except those expressly granted, or those necessarily implied from granted powers. And, if there is a doubt as to whether the power is granted, it must be denied. *Griggs v. Port of Tacoma,* 150 Wash. 402, 273 Pac. 521; *State ex rel. Hill v. Port of Seattle,* 104 Wash. 634, 177 Pac. 671, 180 Pac. 137.

■ Unlike the sovereign state, counties and other municipal subdivisions possess no inherent power of taxation. The constitution itself does not grant them the taxing power, but, by Art. VII, § 9, the legislature is authorized to vest them with this power.

"For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes." *Weyerhaeuser Timber Co. v. Roessler,* 2 Wn. (2d) 304, 97 P. (2d) 1070.

■ The port district is a municipal corporation, made so by legislative action, and may levy and collect such taxes as are provided by statute. The pertinent portion of Rem. Rev. Stat., § 9692, now, Rem. Supp. 1943, § 9692, which gives port districts the right to levy taxes reads as follows:

"All port districts organized under the provisions of this act shall be and are hereby authorized . . . to raise revenue by levy of an annual tax on all taxable property within such port district, the total levy for any one year for all purposes, except for the payment of the pri[n]cipal and interest of the general bonded indebtedness of the port not to exceed two mills on each dollar of the assessed valuation of the taxable property in such port district: *Provided,* That such *levy shall be made* and taxes collected in the manner *now* or *hereafter provided* by law for the *levy* and *collection* of *taxes* in *school districts* of *the first class* . . ." [Italics ours.]

The first port district act was passed in 1911 (Laws of 1911, chapter 92, p. 412). That act provided that port district officials could levy a tax not to exceed two mills in any one year, " . . . in the manner now or hereafter provided by law for the levy and collection of school district taxes." At that time, school district taxes were levied by the county commissioners in an amount arrived at by an estimate prepared by the school directors. In 1913, the act was

amended (Laws of 1913, chapter 62, p. 202) by providing that the levy for taxes should be "made and taxes collected in the manner now or hereafter provided by law for the levy and collection of taxes in school districts of the first class." At that time, school district levies were made as in 1911. The act was again amended in 1917 (Laws of 1917, chapter 125, p. 498), and in 1921 (Laws of 1921, chapter 183, p. 740). In each of the amendatory acts, the legislature retained the provisions relating to the levy and collection of taxes as contained in the act of 1913.

In 1923, the legislature passed an act (Laws of 1923, chapter 131, p. 354 [Rem. Rev. Stat., §§ 4867-1 to 4867-11 [P.P.C. §§ 887-51 to 887-71, inclusive]), entitled, "AN ACT providing for a budget system for making and controlling estimates, tax levies and expenditures in school districts of the first class, . . ." Two sections of that act are pertinent here—§§ 4867-2 and 4867-6:

"§ 4867-2. Preliminary budget—Estimates—Sections. On or before the second Saturday in March in each year, beginning with the year 1924, the board of directors shall prepare the preliminary budget of the district for the ensuing fiscal year. Such budget shall set forth the complete financial program of the district for such ensuing fiscal year, showing in detail the expenditure program and the sources of revenue from which it is to be financed.

"The revenue section shall set forth the estimated receipts from the various sources other than taxation for the ensuing fiscal year, the actual receipts for the last completed fiscal year, the probable surplus that will be on hand at the close of the current fiscal year, and the amount to be raised by taxation.

"The expenditure section shall set forth by detailed items or classes the estimated expenditures for the ensuing fiscal year, the appropriations for the current fiscal year and the expenditures for the last completed fiscal year. Each and every salary shall be set forth separately together with the title or position of the recipient: Provided, that salaries may be set out in total amounts under each budget class if a detailed schedule of such salaries and positions be attached to the budget and made a part thereof."

"§ 4867-6. Revision of items. . . . The board of directors shall then certify the final budget and the amount to be

raised by taxation to the county commissioners for the levying of the district taxes in the manner now provided by law. . . . "

■ It will be noted that the act to which we have just referred was passed after the enactment of the present port district law. However, the port district acts contain the provision that the levy should be in accordance with the procedure provided for school districts, or school districts of the first class, *now* or *hereafter* enacted. We must presume that the legislature had this idea in mind when it passed the school budget law in 1923. The act relating to school budgets and the levy and collection of taxes is what is known as a reference statute. *State v. Rasmussen,* 14 Wn. (2d) 397, 128 P. (2d) 318. Courts are unanimous concerning the primary legal effect of the statutory reference whenever an act of the legislature brings into itself, by reference, the terms of another act. The precepts and terms to which reference is made are to be considered and treated as if they were incorporated into, and made a part of the referring act, just as completely as if they had been explicitly written therein. *Spokane Grain & Fuel Co. v. Lyttaker,* 59 Wash. 76, 109 Pac. 316; *State ex rel. Hunt v. Tausick,* 64 Wash. 69, 116 Pac. 651; *State v. Rasmussen, supra; Jones v. Chamberlain,* 109 N. Y. 100, 16 N. E. 72; *Richardson v. Kildow,* 116 Neb. 648, 218 N. W. 429; *Don v. Pfister,* 172 Cal. 25, 155 Pac. 60; 50 Am. Jur. 331, Statutes, §§ 338 and 339.

■ The general rule is that, when a statute is adopted by specific descriptive reference, the adoption takes the statute as it exists at that time, without subsequent amendments; but, when the language of the adopting act evidences legislative intent to include subsequent amendments, courts will give effect to that intent, and the adopted act, and the amendments thereto, or changes therein, will be held to be within the meaning of the adopting act and to govern the subject matter thereof. *Trimmier v. Carlton,* 116 Tex. 572, 296 S. W. 1070.

■ A review of the statutes concerning the levy of taxes by port districts, and their constant reference to the levy and collection of taxes by school districts, and their

restated adoption of the plan outlined in the school law, can lead to but one conclusion, and that is that it was the definite intention of the legislature that the whole plan of preparing the budget and certifying it to the board of county commissioners, as outlined in the school district acts, was to be implicitly followed by the officers of port districts. That being the rule, we hold that it was the duty of the port commissioners, in making their levy in 1943, to take into consideration the estimated income for the succeeding year, the money it would have on hand at the beginning of the succeeding year, and the valuation of the property in the district.

In any event, we are of the opinion that it is contrary to public policy, and unlawful, for municipalities to accumulate large surpluses unless they have legislative sanction so to do.

The judgment of the trial court was correct and is therefore affirmed.

MALLERY, C. J., MILLARD, STEINERT, ROBINSON, JEFFERS, SCHWELLENBACH, and ABEL, JJ., concur.

HILL, J. (concurring)—While I concur on the grounds last stated in the majority opinion, I am greatly perturbed by the results achieved, and it seems to me that we do less than our duty if we do not make clear what those results are.

On grounds of high public policy, we hold that approximately three mills of the 4.25 mills levied for the port of Tacoma for the year was illegally excessive, and that, in consequence thereof, there was collected from the taxpayers of Pierce county approximately two hundred fifty thousand dollars which should have remained in their pockets.

By this decision, some fifty-nine perspicacious and alert taxpayers will secure refunds of $29,227.56, because they discovered this illegally excessive tax and paid under protest the portion which was illegally levied. With this result I have no quarrel.

But the port of Tacoma will have the benefit of approximately two hundred twenty thousand dollars which we

hold they had no right to collect, and all the other taxpayers of Pierce county are out of pocket the same amount. With this result I am greatly concerned. It puts a premium on knowingly making excessive levies, with the expectation that, at most, not more than ten or fifteen per cent of the amount illegally levied and collected will have to be returned. This presents a problem for the legislature.

A partial remedy may be available to the taxpayers of Pierce county by virtue of Rem. Rev. Stat. (Sup.), §§ 11241-1 to and including 11241-4 (Laws of 1939, chapter 16, p. 42, §§ 1, 2, 3, and 4), and Rem. Supp. 1941, § 11241-5 (Laws of 1941, chapter 154, p. 430, § 1), which set forth the procedure whereby a taxpayer may recover taxes up to two hundred dollars which have been "incorrectly extended against him on the tax-rolls." However, the amount involved in most cases is so small (although the aggregate is large) that the individual taxpayer, if he should discover the fact that there was an excessive levy, will not trouble to avail himself of the remedy. Taxing bodies should not be allowed to benefit by their own bad faith.

Respondent in this case relied on *Weyerhaeuser Timber Co. v. Roessler*, 2 Wn. (2d) 304, 97 P. (2d) 1070. With that case I am in entire accord. The plaintiff there sought to restrict the levy of the illegally excessive tax. Had that procedure been followed here, the port commission levy would have been reduced by approximately three mills, all taxpayers would have been protected, and the port would not have been permitted to profit by its illegal levy. This, it seems, is the procedure that should be commended to those tax-watching agencies which are on the alert to detect illegal levies.

I am not convinced that the budgeting procedure provided for first-class school districts was intended to be applicable to or is appropriate for port districts. I have based my concurrence solely on the ground, as stated in the *Weyerhaeuser Timber Co.* case, *supra,* that:

"While the power to levy taxes is an inherent attribute of sovereignty, there is implicit in the constitutions of all free governments the limitation that the property of the

citizen may be taken from him under the guise of taxation only to meet definite public needs."

and, as stated in the majority opinion,

" . . . that it is contrary to public policy, and unlawful, for municipalities to accumulate large surpluses unless they have legislative sanction so to do."