TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

|  | : |  |
| --- | --- | --- |
| OPINION | : | No. 86-1102 |
|  | : |  |
| of | : | March 24, 1987 |
|  | : |  |
| JOHN K. VAN DE KAMP | : |  |
| Attorney General | : |  |
|  | : |  |
| JACK R. WINKLER | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

---

STEVE WHITE, CHIEF ASSISTANT ATTORNEY GENERAL, has requested an opinion on the following question:

Are state prisoners serving sentences of 25 years to life, 15 years to life, or life with possibility of parole eligible for worktime credits under Penal Code section 2933?

CONCLUSION

State prisoners serving sentences of 25 years to life, 15 years to life, or life with possibility of parole are not eligible for worktime credits under Penal Code section 2933. The minimum terms of life sentences for murder are reduced not more than one- third by good behavior and participation credits but not by worktime credits under Penal Code section 2933. The minimum terms of life sentences for attempted assassination and certain habitual offenders are reduced not more than one-half by worktime credits under Penal Code section

1

2933. Every prisoner serving a life sentence must serve at least seven calendar years in prison before being paroled.


ANALYSIS


As part of the Uniform Determinate Sentencing Act of 1976, usually referred to as the Determinate Sentencing Law, or "DSL," article 2.5 entitled "Credit on Term of Imprisonment" (commencing with § 2930) was added to chapter 7, title 1, part 3 of the Penal Code. (Statutes of 1976, ch. 1139, § 276, p. 5146.) Said article will be referred to herein as "Article 2. 5." Sections 2930 and 2931[1] provided for reduction of not more than one-third of a prisoner's prison sentence for good behavior and participation in prison programs. Section 2932 provides for denials of credits for misconduct.

In 1982 the Legislature substantially revised the system of credits to reduce prison sentences. (Statutes of 1982, ch. 1234.) Sections 2930 and 2931 were amended to phase out the use of good behavior and participation credits not to exceed one-third the sentence by limiting its application to those whose crimes were committed prior to January 1, 1983. Section 2933 was added to provide "worktime credits" for a prisoner's performance in work assignments and educational programs. The sentence is reduced one day for each day of such performance. The relevant parts of section 2933 read as follows:

"(a) It is the intent of the Legislature that persons convicted of crime and sentenced to state prison, under Section 1170, serve the entire sentence imposed by the court, except for a reduction in the time served in the custody of the Director of Corrections for performance in work, training, or education programs established by the Director of Corrections. Worktime credits shall apply for performance in work assignments and performance in elementary, high school, or vocational education programs. . . . For every six months of full-time performance in a credit qualifying program, as designated by the director, a prisoner shall be awarded worktime credit reductions from his term of confinement of six months. A lesser amount of credit based on this ratio shall be awarded for any lesser period of continuous performance. . . . Every prisoner who refuses to accept a full-time credit qualifying assignment or who is denied the opportunity to earn worktime credits pursuant to subdivision (a) of Section 2932 shall be awarded no worktime credit reduction . . . . Under no circumstances shall any prisoner receive more than six months' credit reduction for any six-month period under this section.

---

[1]Section references are to the Penal Code unless otherwise indicated.

"(b) Worktime credit is a privilege, not a right. Worktime credit must be earned and may be forfeited pursuant to the provisions of Section 2932. Except as provided in subdivision (a) of Section 2932, every prisoner shall have a reasonable opportunity to participate in a full-time credit qualifying assignment in a manner consistent with institutional security and available resources.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

Section 2933 is expressly limited to persons sentenced under section 1170. Thus the worktime credits provided under section 2933 are not applicable to persons sentenced under section 1168(b) by virtue of section 2933 alone. If section 2933 worktime credits are to apply to those sentenced under section 1168(b) it must be because of some other statute.

Section 1168 provides generally how prison sentences are to be imposed by the court. Section 1168 provides:

"(a) Every person who commits a public offense, for which any specification of three time periods of imprisonment in any state prison is now prescribed by law or for which only a single term of imprisonment in state prison is specified shall, unless such convicted person be placed on probation, a new trial granted, or the imposing of sentence suspended, be sentenced pursuant to Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2 [the DSL].

"(b) For any person not sentenced under such provision, but who is sentenced to be imprisoned in the state prison, including imprisonment not exceeding one year and one day, the court imposing the sentence shall not fix the term or duration of the period of imprisonment [the Indeterminate Sentence Law or 'ISL']."

Section 3040 provides in part:

"The Board of Prison Terms shall have the power to allow prisoners imprisoned in the state prisons pursuant to subdivision (b) of Section 1168 to go upon parole outside the prison walls and enclosures . . . ."

Section 3046 provides in part:

"No prisoner imprisoned under a life sentence may be paroled until he

3

has served at least seven calendar years...."

In In re Monigold (1983) 139 Cal. App. 3d 485, 490-491 the court explained the different methods of providing credit for prison conduct for determinate and indeterminate sentences as follows:

"For those prisoners who receive a determinate sentence the Legislature has provided for conduct credits to reduce the total sentence by up to one-third. (§§ 2930-2932) Section 2931 invests the Department of Corrections with the authority to allow conduct credits to those persons sentenced under section 1170, and to those persons who would have been sentenced under that section if they had committed their crimes after its effective date.

"For indeterminate term prisoners the Legislature enacted section 3040, which provides that the Board of Prison Terms shall have the power to parole persons pursuant to section 1168. A life sentence prisoner must serve a minimum calendar term before becoming eligible for parole. Conduct credits do not apply to that minimum term. (§§ 3046, 3049; People v. Sampsell (1950) 34 Cal. 2d 757, 764.) However, the Board of Prison Terms has provided by regulation for the application of conduct credits to such prisoners in determining their ultimate release date after the service of the minimum calendar term. (Cal. Admin. Code, tit. 15, § 2290.)

"It can be seen that with the original enactment of the DSL the Legislature provided for two classes of prisoners, those sentenced to determinate terms under chapter 4.5, and those sentenced to indeterminate terms under section 1168. Prisoners sentenced to determinate terms had a date certain upon which they would be released, while those sentenced to indeterminate terms were to be released on parole when the Board of Prison Terms determined that release was appropriate. (§ 3040 et seq.; see also Cal. Admin. Code, tit. 15, § 2280 et seq.) Through good conduct in prison both types of prisoner can earn earlier release: determinate prisoners through the application of conduct credits to reduce their terms by one-third, and indeterminate prisoners by behaving in a manner which would convince the Board of Prison Terms that an earlier release was appropriate and also by an award of regulatory conduct credits. Thus no prisoner entitled to ultimate release is to be denied consideration of his prison conduct."

Claims that the different methods of providing credit for prison conduct as between those serving determinate and indeterminate sentences denied equal protection of the laws in violation of the Fourteenth Amendment were rejected in McQuillion v. Rushen

4

(1986) 639 F. Supp. 420, 424.

Because section 2933 expressly limits its application to persons sentenced to state prison under section 1170 we must determine whether persons convicted of crimes for which the punishment prescribed by statute is 15 or 25 years to life or life with possibility of parole are sentenced under section 1170. Section 1168(a), *supra*, provides who are to be sentenced under section 1170. A statute specifying a term of 15 years to life or 25 years to life does not specify three time periods not only a single term within the meaning of section 1168(a), *supra*. (See People v. Garcia (1981) 115 Cal. App. 3d 85, 113, n. 19.) The words "or for which only a single term of imprisonment in state prison is specified" were added to section 1168(a) by chapter 1432, Statutes of 1984, section 8. The purpose of adding that language was to make prison terms of one year and a day (which the same statute specified for two crimes) a determinate sentence to be imposed under section 1170. The added language did not include a sentence of life (with possibility of parole) as a single term of imprisonment. Such a straight life sentence is not a single term of imprisonment but one for which the Board of Prison Terms may parole the prisoner after serving seven calendar years. (§ 3046; In re Jeanice D. (1980) 28 Cal. 3d 210, 219.) Under section 3040 such eligibility to parole applies only to those imprisoned pursuant to subdivision (b) of section 1168. We conclude that when a statute prescribes 15 or 25 years to life or life imprisonment (with possibility of parole) that such sentences are imposed pursuant to section 1168(b), the ISL, and not under section 1170.[2] (People v. Garcia, *supra*.) Thus if worktime credits are to apply to such sentences such application must result from some statute other than section 2933.

One law which has been suggested as authorizing worktime credits for those with indeterminate sentences is section 190 added by initiative measure approved by the voters November 7, 1978. Section 190 provides:

"Every person guilty of murder in the first degree shall suffer death, confinement in state prison for life without possibility of parole, or

---

[2]We recognize that the courts have used the term "determinate life sentence" in some cases. In In re Stanworth (1982) 33 Cal. 3d 176, 183 it is used to refer to life imprisonment ordered by the supreme court when a death penalty was set aside in considering whether parole considerations under DSL or the ISL were to apply.  In In re Jeanice D. (1980) 28 Cal. 3d 210, 216, "determinate life sentence" is used to refer to a straight life sentence as distinguished from a term of years to life for purposes of determining eligibility of juveniles convicted of serious crimes to CYA.  (Welf. & Inst. Code § 1731.5 makes juveniles sentenced to "imprisonment for life" ineligible to CYA.)  People v. Smith (1984) 35 Cal. 3d 798, 808-809 speaks of a "determinate life term" as referring to an express life term for the purpose of determining the number of peremptory challenges under section 1070.  None of these cases suggest that such "determinate life sentences" are imposed under section 1170.

5

confinement in the state prison for a term of 25 years to life. The penalty to be applied shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5.

"Every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 15 years to life.

"The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code shall apply to reduce any minimum term of 25 or 15 years in a state prison imposed pursuant to this section, but such person shall not otherwise be released on parole prior to such time."

A statute enacted by the electorate as an initiative measure may be changed only with the approval of the electorate unless the initiative measure permits amendment or repeal without their approval. (Art. II, § 10(c) of the California Constitution.) A review of the initiative measure which enacted section 190 (Proposition 7 in the Nov. 1978 general election) disclosed no provision which permits amendment or repeal without voter approval.

While nothing in chapter 1234, Statutes of 1982 expressly provides that the Section 2933 added to the Penal Code thereby was to be in Article 2.5 (of ch. 7, tit. 1, part 3) we think the Legislature evidenced its intention to add the new section to said Article 2.5 by giving it section number 2933 without creating a new article between the said Article 2.5 and the next article (art. 3) commencing with section 2947. Thus we conclude that section 2933 is now part of said Article 2.5.

It does not follow, however, that section 2933 was incorporated into the provisions of section 190 because it is part of Article 2.5. When section 190 was amended in 1978 Article 2.5 consisted only of sections 2930, 2931 and 2932. Thus the reference to said Article 2.5 in section 190 when the people enacted that section in 1978 was to those three sections as they read then and not to section 2933 which was not enacted until four years later. The applicable rules of construction were expressed in Palermo v. Stockton Theatres, Inc. (1948) 32 Cal. 2d 53, 58-59 as follows:

"It is a well established principle of statutory law that, where a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified, and that the repeal of the provisions referred to does not affect the adopting statute, in the absence of a clearly expressed intention to the contrary. [Citations.]"

"  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"It also [ ] [must] be noted that there is a cognate rule, recognized as applicable to many cases, to the effect that where the reference is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time, and (it may be assumed although no such case has come to our attention) as they may be subjected to elimination altogether by repeal. [Citations.]"

The first of these rules was reaffirmed and applied in People v. McGee (1977) 19 Cal. 3d 948, 958, footnote 3.

We must therefore determine whether the reference to "[t]he provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code" in section 190 as enacted by the people in 1978 was general or special under the aforementioned rules. The Palermo case, cited above, is instructive on this point. The court in that case stated, at pages 59-60:

"'The question whether the reference to the treaty contained in the California Land Act [an initiative measure] should be deemed specific or general within the meaning of the foregoing rules might, as an abstract proposition, admit of different opinions. The language is 'any treaty now existing between the government of the United States and the nation or country of which such alien is a citizen or subject.' However, in view of the fact that there is grave doubt whether our Legislature could constitutionally delegate to the treaty-making authority of the United States the right and power thus directly to control our local legislation with respect to future acts [citations],' we are constrained to hold that the reference is specific and not general, since such a construction is at least a reasonable one [citations] and therefore to be preferred to one of doubtful validity [citations]."

In Rancho Santa Anita v. City of Arcadia (1942) 20 Cal. 2d 319, the city, in 1913, adopted an ordinance providing: "All provisions of Title IX of the Political Code of the State of California in regard to revenue and taxation which are not inconsistent with the provisions of this Ordinance shall apply to and govern all matters of revenue and taxation which are not herein specifically provided for, substituting where necessary the proper city officer for any county officer therein referred to." The court observed (at pp. 321-322):

"Title IX of the Political Code is concerned only with state and county

7

taxation and therefore does not apply to the defendant city except insofar as it is incorporated by reference into the city ordinance of 1913. The provisions restricting the amount of taxes to budgetary requirements were added to the Political Code subsequent to the passage of that ordinance. Plaintiff contends that the ordinance incorporated title IX not only as it then existed but as afterwards revised. It is not necessary to decide whether the city council had the constitutional authority to adopt unknown, future enactments of the state Legislature because the ordinance makes clear the council's intention to adopt article IX only as it then existed. When one statute incorporates the provisions of another by a specific reference to the title, the latter is incorporated as it then exists and not as it is subsequently modified. [Citations.] The 1913 ordinance refers specifically to title IX of the Political Code and makes no reference to subsequent modifications. The defendant city was therefore not required to comply with those provisions of title IX adopted after 1913."

In Kirk v. Rhoads (1873) 46 Cal. 398 the act to incorporate the City of Sacramento provided that "all the provisions of law in force regulating elections, so far as the same are applicable and not inconsistent with the provisions of this Act, shall apply to the election of city officers by the voters of this city." The court observed that there was an obvious distinction between the adoption into one Act of a provision as prescribed in another specified Act, and the adoption in a special Act of a general system in force by virtue of general laws. The court then stated: "We think it is in accordance with the evident intent of the Legislature, to hold that the general election law of the State should apply, so far as applicable, and with its successive modifications and changes, to the municipal elections of Sacramento."

Applying the two rules of construction to section 190 in the same manner as in the cases referred to it would appear that its reference to "[t]he provisions of Article 2. 5 (commencing with section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code" is specific rather than general because it refers to specified provisions in the Penal Code without any reference to subsequent modifications. (Rancho Santa Anita v. City of Arcadia, *supra*, 20 Cal. 2d 319.

Of course, the rules of construction referred to apply only when there is no indication of legislative intent which points to a different result. We therefore examine the initiative measure which enacted section 190 for indications of its intent and purpose. The section 190 repealed by the initiative provided three possible penalties for first degree murder, namely death, life without possibility of parole, and life with parole possible after seven years and fixed the penalty for second degree murder at five, six or seven years in prison. The new section 190 also provided three penalties for first degree murder, namely death, life without possibility of parole and 25 years to life in prison and fixed the penalty

8

for second degree murder at 15 years to life in prison. Thus the initiative effected a substantial increase in the minimum prison term for both degrees of murder.[3] The analysis of the initiative by the Legislative Analyst which appeared in the ballot pamphlet stated that the proposed initiative would have the following effect on minimum prison confinement:

> "The measure provides that individuals convicted of first degree murder and sentenced to life imprisonment shall serve a minimum of 25 years, less whatever credit for good behavior they have earned, before they can be eligible for parole. Accordingly anyone sentenced to life imprisonment would have to serve at least 16 years and eight months. The penalty for second degree murder would be increased to 15 years to life imprisonment. A person sentenced to 15 years would have to serve at least 10 years before becoming eligible for parole."

The same analysis had already pointed out that under existing law a person sentenced to life imprisonment for first degree murder would be eligible for parole in seven years and that a person sentenced to six years for second degree murder, whose prison sentence could be reduced up to one-third for good behavior, could be eligible for parole after serving 4 years. (A five year sentence reduced one-third would require serving 3 years, four months before parole eligibility.)

The effect of the new section 190 was to extend the minimum eligible parole date for first degree murder from 7 years to 16 years, eight months and for second degree murder from 3 years, four months to 10 years. These minimums are based upon a maximum reduction of one-third the sentence for good behavior participation in programs set forth in Article 2.5 as it read in 1978. If section 2933 were to apply to provide a one-half reduction in sentence for worktime credits the minimum eligible parole date for first degree murder would be 12 years, six months and that for second degree murder would be 7 years, six months. This would reduce the minimum for first degree murder by 4 years, two months and the minimum for second degree murder by 2 years, six months from that fixed by the people in 1978. Thus construing the reference to Article 2.5 in section 190 to incorporate future changes in that article by the Legislature would result in reducing the minimum prison terms for first and second degree murder contrary to the manifest purpose and intent of the electorate in enacting the new section 190 to substantially increase those minimums.

We conclude that the reference to "[t]he provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code" in section 190 of the Penal Code incorporated the provisions of that article as they were in 1978 when section 190

---

[3]In In re Jeanice tY supra 28 Cal. 3d at 219 the court acknowledged that one purpose of the 1978 initiative was to increase the penalties for first and second degree murder.

was enacted and that subsequent changes in said article by the Legislature (including the addition of section 2933 in 1982) have no effect on the meaning of section 190. It follows that state prisoners serving a sentence of 25 years to life for first degree murder or 15 years to life for second degree murder pursuant to section 190 as enacted by the people in 1978 are not eligible for worktime credits under section 2933. However, they are eligible for good behavior and participation credits pursuant to article 2.5, chapter 7, title 1, part 3 of the Penal Code as that article read on November 7, 1978 to reduce the minimum terms of such sentences.

Another law which refers to Article 2.5 with respect to prisoners serving sentences of 25 or 15 years to life is section 217.1(b) concerning attempted assassination which provides:

> "(b) Every person who attempts to commit murder against any person listed in subdivision (a) in retaliation for or to prevent the performance of the victim's official duties, shall be confined in the state prison for a term of 15 years to life. The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title I of Part 3 shall apply to reduce any minimum term of 15 years in the state prison imposed pursuant to this section, but such person shall not otherwise be released on parole prior to such time."

Subdivision (b) was added to section 217.1 by chapter 683, Statutes of 1983. Thus section 2933 providing for worktime credits was part of the article 2.5 referred to in said subdivision (b) when it was enacted. Section 2933, as it read when subdivision (b) was added to section 217.1 in 1983, is therefore incorporated into said subdivision (b) by reference. We conclude that a state prisoner serving a sentence of 15 years to life for attempted assassination in violation of section 217.1(b) is eligible for worktime credits under Penal Code section 2933 to reduce the minimum term of such sentence.

Section 667.7 provides that an habitual offender is subject, inter alia, to "imprisonment in the state prison for life and shall not be eligible for release on parole for 20 years, . . ." This section also provides that '[t]he provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title I of Part 3 shall apply to reduce any minimum term in a state prison imposed pursuant to this section, but such person shall not otherwise be released on parole prior to such time." Section 667.7 was enacted by chapter 1108, Statutes of 1981 and was amended by chapter 1440, Statutes of 1986, which became effective January 1, 1987. Since section 2933 was not enacted until 1982 it was not adopted by the reference to Article 2.5 in the 1981 statute enacting section 667.7. However, when section 667.7 was amended in 1986 the reference to Article 2.5 in the amended version did incorporate section 2933 into section 667.7 on its effective date, January 1, 1987. We conclude that persons sentenced to life imprisonment under section 667.7 are now entitled to the benefits of section

2933 to reduce the minimum term of such sentence. We do not consider what a minimum term is under section 667.7 since that is beyond the scope of the question presented.

The only other statutes we have found specifying terms of imprisonment of 15 or 25 years to life or life with possibility of parole make no reference to Article 2.5. Section 209 providing penalties for kidnapping prescribes "imprisonment in the state prison for life with possibility of parole" in cases where no person suffers death or bodily harm and in cases of kidnapping to commit robbery without any reference to Article 2.5. Section 219 prescribes "imprisonment in state prison for life with the possibility of parole" for trainwrecking in cases where no person suffers death without any reference to Article 2.5. Section 12310(b) prescribes "imprisonment in the state prison for life" for exploding a bomb which causes mayhem or great bodily injury without any reference to Article 2.5. Since each of these three statutes (§§ 209, 219 & 12310(b)) prescribe life imprisonment without any minimum term specified, section 3046 would apply to such life sentences prohibiting parole until the prisoner has served at least seven calendar years in prison. Section 4500 prescribes "imprisonment in the state prison for life without the possibility of parole for nine years" for aggravated assault by a life prisoner where the victim does not die within a year and a day without any reference to Article 2. 5. Since none of the statutes referred to in this paragraph make any reference to Article 2. 5 the credits for prison conduct authorized by Article 2.5 will not affect the life sentences imposed pursuant to those statutes.

We conclude that state prisoners serving sentences of 25 years to life, 15 years to life, or life with possibility of parole are not eligible for worktime credits under section 2933 because they are not sentenced under section 1170 and section 2933 expressly limits its application to prisoners sentenced under section 1170. The minimum terms of life sentences for murder are reduced not more than one-third by good behavior and participation credits under sections 2930 and 2931 as those sections read November 7, 1978, but not by worktime credits under section 2933. The minimum terms of life sentences for attempted assassination and certain habitual offenders are reduced not more than one-half by worktime credits under section 2933. Every prisoner serving a life sentence must serve at least seven calendar years in prison before being paroled.

11